1   Yuri Voronin (SBN 206325)
2   LAW OFFICES OF YURI VORONIN
    14011 Ventura Blvd. Suite 212W
3   Encino, CA 91423
    Tel:    (818) 906-9900
4   Fax:    (818) 906-9904
    Email:  yvoronin@lawyer.com
5

6   Attorneys for DEFENDANTS,
7   GOLDEN AGE HOME CARE, INC.
    & ROBERT PARKENS
8

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11              WESTERN DIVISION – LOS ANGELES

12

13  TRANSAMERICA LIFE INSURANCE          Case No. 2:19-cv-00662-SVW-JPR
    COMPANY,
14                                       *[Assigned to:*
15          Plaintiff,                   *Hon. STEPHEN V. WILSON &*
                                         *Hon. JEAN P. ROSENBLUTH (Magistrat*
16          vs.                          *Judge)]*

17  VLADIMIR LUKASHIN; OKSANA            **DECLARATION OF YURI VORONIN,**
    FAERMAN; GOLDEN AGE HOME CARE        **COUNSEL FOR DEFENDANTS**
18  INC. and ROBERT PARKENS              **GOLDEN  AGE HOME CARE, INC. &**
                                         **ROBERT PARKENS WITH RESPECT**
19          Defendants.                  **TO DEFENDANT VLADIMIR**
                                         **LUKASHIN'S EX PARTE**
20                                       **APPLICATION TO CONTINUE TRIAL**
21
22                                       **Complaint filed: January 29, 2019**
23
24                                       **Trial Date: January 21, 2020**
25
26
27
28

                        DECLARATION OF YURI VORONIN
                                      1

I, YURI VORONIN, declare and say as follows:

1.      I am an attorney at law licensed to practice before all the courts of the State of California, and am the attorney of record for Defendants GOLDEN AGE HOME CARE INC. and ROBERT PARKENS. The following is based upon my personal knowledge, information and belief, and if called upon to testify thereto, I could and would do so competently.

2.      This declaration is submitted in relation to Defendant Vladimir Lukashin' Ex Parte Application to Continue Trial and Related Pre-Trial Deadlines filed on November 15, 2019 (ECF No. 45). Specifically, there is a dispute among the parties regarding whether, or not, the Court set a Discovery Cutoff date at any time, and if so, whether the Discovery Cutoff Date was extended/continued when the Court granted Plaintiff Transamerica Life Insurance's Motion to Continue Trial by Order entered August 26, 2019 (ECF No. 40).

3.      Defendants Golden Age and Parkens position with respect to Discovery is the discovery cutoff date has passed, and based thereon, absent a Motion to Extend Discovery, no further discovery is warranted.

4.      Specifically, at the Initial Status Conference on April 10, 2019, the Court orally set a Discovery Cutoff date of August 26, 2019, and such Discovery Cutoff Date is reflected in the Reporter's Transcript of Proceedings. A true and exact copy of the Reporter's Transcript of Proceedings is attached hereto, marked Exhibit "1" and incorporated herein by reference as though fully set forth. *[Highlighting added on page 21 of the Transcript]*

In relevant part:

"**THE COURT:**  And either side can make a dispositive motion at any time they deem appropriate. **The discovery cutoff will be at the end of August.**

THE CLERK:  **That will be August 26, 2019.**

**THE COURT:  All right.** Thank you. Thank you.

THE CLERK:  All rise. Court is now adjourned."

[**See** Exhibit "1" - Reporter's Transcript of Proceedings at Page 21, Lines 13-16].

5.      Transamerica acknowledged and confirmed the existence of the August 26, 2019 Discovery Cutoff Date by referencing the Discovery Cutoff Date in its prior Ex Parte Motion to Continue Trial (ECF No. 39 at page 7, Line 17, and page 11, Line 19), as well as the supporting Declaration of Katharine Mooney (ECF No. 39-1 at page 4, Line 1).

6.      However, contrary to its own prior acknowledgment and admissions regarding the existence of the Discovery Cutoff Date, Transamerica *now* takes the contrary position, specifically, alleging that the Court never set a Discovery Cutoff Date to begin with. Such position is factually inaccurate, as set forth in the Reporter's Transcript of Proceedings (April 10, 2019 – Exhibit 1), and otherwise contrary to Transamerica's Ex Parte Motion to Continue Trial (ECF No. 39 at page 7, Line 17 and page 11, Line 19), as well as the supporting Declaration of Katharine Mooney (ECF No. 39-1 at page 4, Line 1).

7.      The fact that the Court revised Movant Transamerica's [proposed] Order to Continue Trial (ECF No. 39-3), which included a proposed new Discovery Deadline of December 24, 2019 (ECF No. 39 at page 2, Line 8) further contradicts Transamerica's present position that there was no

previously set Discovery Cutoff date. In fact, Transamerica's arguments on the issue defy logic and beg the question - *if there was no prior Discovery Cutoff date set by the Court, why would Transamerica request a new/continued Discovery Deadline?*

8.  When the Court ultimately granted Transamerica's Motion to Continue Trial, the entered <u>Order Continuing Trial</u> (ECF No. 40) replaced the language proposed by Transamerica (Discovery Deadline of December 24, 2019 [*See* ECF No. 39 at page 2, Line 8]) with - "Refer to Civil Trial Preparation Order (Dkt #34)" (ECF No. 40). Thus, based on the language of the entered <u>Order to Continue Trial </u>(ECF No. 40), as revised by the Court before entry thereof, no new Discovery Deadline/Cutoff was set, such that the original Discovery Cutoff Date of August 26, 2019, as set by the Court at the Initial Status Conference on April 10, 2019, remains in effect [See Exhibit "1" - <u>Reporter's Transcript of Proceedings</u> at Page 21, Lines 13-16]. Based thereon, Defendants Golden Age and Parkens' position on the issue of Discovery is that no further Discovery is to be had, absent an appropriate Motion and Order of the Court to Extend the Discovery Cutoff of August 26, 2019. In that connection, I so advised all counsel via e-mail on October 21, 2019 after learning of Transamerica's intent to set and proceed with Depositions of non-parties in November 2019, and parties in December 2019. The exact language of said e-mail is set forth below:

*On Oct 21, 2019, at 5:49 PM, Yuri Voronin <<u>yvoronin@lawyer.com</u>> wrote:*

"Dear Counsel for All Parties and Parties in Interest:

As you know, at the 4/12/19 Status Conference, among other things, the Court set a <u>Discovery Deadline and</u>

<u>Dispositive Motion Cutoff of August 26, 2019</u>. In that connection, when Transamerica filed its Motion to Continue Trial, the foregoing cutoff was referenced in attorney Katharine Mooney's supporting Declaration (Declaration of Katharine Mooney [Doc 39-1] at paragraph 13, pages 3-4).

In addition to seeking to continue the Trial Date, Plaintiff also sought a new Discovery cutoff date and referenced that all defendants were granted 30 day discovery response extensions. On that note, in Plaintiff's proposed Order (Doc 39-3), in relevant part, Plaintiff included a new proposed Discovery Deadline/Cutoff of December 24, 2019; however, when the Court ultimately entered the Order continuing Trial on 8/26/19 [Doc 40], the Court made various revisions to Plaintiff's proposed Order, in relevant part, *completely removing the language regarding the proposed December 24, 2019 cutoff, replacing that language with: "Refer to Civil Trial Preparation Order (Dkt #34)"* .... however, the Civil Trial Preparation Order is silent as to a discovery cutoff - only discovery dispute procedures at page 4, paragraph D.1. are set forth, which Defendants Golden Age Home Care Inc. and Robert Parkens therefore interpret as a refusal by the Court to alter or extend the previously set Discovery Cutoff date of August 26, 2019 as announced by the Court on April 12, 2019.

PLEASE TAKE NOTICE  that Defendants Golden Age Home Care Inc. and Robert Parkens interpretation of all the facts, based on documents filed with the Court, the Court's April 12, 2019 scheduling of the August 26, 2019 discovery cutoff, and the Court's Order [Doc 40], is that the Court never extended the original discovery cutoff date, despite Plaintiff's request, specifically rejecting said request by revising the proposed Order previously lodged by Plaintiff with its Application to to continue Trial. With that said, Defendants Golden Age Home Care Inc. and Robert Parkens did however agree to an extension of the discovery cutoff date by 30 days based on Transamerica's granting of 30 day extensions related to Discovery served on 5/24/19 and 6/6/19, respectively, both of which were responded to on 7/18/19 and 7/23/19 respectively. Thus, with a 30 day extension of the August 26, 2019 discovery cutoff by agreement, the discovery cutoff was extended to/through September 25, 2019. If there was a different agreement pertaining to Defendant Lukashin, neither I nor my clients

---

**DECLARATION OF YURI VORONIN**

5

are aware of it, and is of no consequence to my clients in any event.

Based on the foregoing, Defendants Golden Age Home Care Inc. and Robert Parkens take the legal position that the only appropriate discovery after September 25, 2019 is related discovery propounded and responded to prior to September 25, 2019, with the meet and confer process with Plaintiff as to Defendants Golden Age Home Care Inc. and Robert Parkens discovery responses served on Plaintiff on 7/18/19 and 7/23/19, respectively, having been completed on 10/15/19. Defendants Golden Age Home Care Inc. and Robert Parkens therefore object to any and all new discovery after September 25, 2019, including Depositions of any party or non-party, and written discovery of any nature whatsoever. As such, Defendants Golden Age Home Care Inc. and Robert Parkens shall not agree to be deposed, and object to any pending depositions that have been scheduled, if any, or are in the process of being scheduled, by any party, and reserve the right to exclude/seek exclusion of any such evidence at Trial.

Lastly, Defendants Golden Age Home Care Inc. and Robert Parkens still have not been notified as to how/when counsel for Defendant Lukashin intends to proceed given the 10/16/19 filing of a Notice of Unavailability which makes Defendant Lukashin's counsel unavailable for anything after October 28, 2019, and, of particular importance, the Final PreTrial Conference [1/13/2020], Trial [1/21/2020], in addition to requisite conferences of counsel to participate in and jointly prepare/submit pre-Trial Stipulations and documents, and through the entire month of February 2020. However, Defendants Golden Age and Parkens take no position of Defendant Lukashin's counsel's unavailability and are prepared to proceed with Trial as scheduled, especially given the passing of the discovery cutoff date. Thus, if or when counsel moves the Court to continue Trial, Defendants Golden Age and Parkens will at that time participate in any requisite meet and confer on the subject.

Thank you.

Yuri Voronin, Esq."

9.    At no time, including the date of this Declaration, some 12 weeks after entry of the Court's <u>Order to Continue Trial</u> (ECF No. 40), did Plaintiff Transamerica move this Court to Clarify its Order entered on August 26, 2019, which, on its face, did not set a new Discovery Cutoff Date.

10.    There is no reason to believe that the Court acted capriciously in refusing to extend the Discovery Cutoff Date beyond the original August 26, 2019 Cutoff date. The Court continued the Trial at Transamerica's request, for a period of time that the Court deemed appropriate. However, Plaintiff Transamerica is apparently unsatisfied with the relief actually granted it, and now makes contradictory arguments on the issue of the Discovery Cutoff.

11.    Nothing prevented Plaintiff Transamerica from completing all Discovery prior to the August 26, 2019 Cutoff date. In that connection, Plaintiff Transamerica did not set a single Deposition, or move the Court to Compel Discovery, or further responses to Discovery prior to the Discovery Cutoff date. In that regard, at least as to Defendants Golden Age and Parkens, Plaintiff Transamerica was served with discovery their respective discovery responses over a month before the Discovery Cutoff date (July 18, 2019 and July 23, 2019, respectively). On that note, Defendants GOLDEN AGE HOME CARE, INC. and ROBERT PARKENS had agreed with Transamerica to consensually extend the Discovery Cutoff date by 30 days based on Transamerica's having granted a response deadline extension of 30 days to Transamerica's last round of written Discovery. Thus, Defendants Golden Age and Parkens had consented to continue to engage in Discovery through September 25, 2019 [30 days beyond the August 26, 2019 Discovery Cutoff Date]. However, Plaintiff Transamerica failed to engage in any further Discovery through the month of September 2019, with the exception of sending its so called Deficiency Letter on September 20, 2019 regarding Defendants Golden Age and Parkens

discovery responses served on Plaintiff Transamerica, at the latest, on July 23, 2019 – 59 days after being served with discovery responses.

12.    Given the totality of the facts and circumstances, Plaintiff Transamerica has not been nearly as diligent as it would have this Court believe, and should not be bailed out for failing to act timely to complete Discovery and/or to seek clarification from the Court regarding the Discovery Cutoff issue. Thus, although continuing the Trial and Pre-Trial Conference dates may be warranted based on attorney Julia Sklar's period of unavailability, there should be no further discovery for any party, except for pending law and Motion related to Discovery completed prior to the August 26, 2019 Discovery Cutoff date.

13.    Lastly, in the event that the Court determines that discovery has not been cut off, Defendants Golden Age and Parkens posit that all discovery, of any nature or as to any party or non-party, should be stayed in its entirety throughout the course of attorney Julia Sklar's period of unavailability for it is fundamentally unfair for active litigation to proceed as to some defendants, and not as to others – stated otherwise, the case should either be stayed as requested by attorney Julia Sklar's, or not at all.

I declare under penalty of perjury under the Laws of the United States that the foregoing is true and correct.

Executed this 18TH day of November 2019, at Los Angeles, California.


By:    /s/ Yuri Voronin
             Yuri Voronin - Declarant

# EXHIBIT 1

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

- - -

HONORABLE STEPHEN V. WILSON,
UNITED STATES DISTRICT JUDGE PRESIDING

- - -

TRANSAMERICA LIFE INSURANCE     )
COMPANY,                        )
                                )
        PLAINTIFF,              )
                                )     08-1404 R
VS.                             )
                                )
VLADIMIR LUKASHIN,              )
                                )
        DEFENDANT.              )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS
WEDNESDAY, APRIL 10, 2019
A.M. SESSION
LOS ANGELES, CALIFORNIA


SHERI S. KLEEGER, CSR 10340
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 402
LOS ANGELES, CALIFORNIA 90012
PH:  (213)894-6604

1

2

APPEARANCES OF COUNSEL:

3

ON BEHALF OF PLAINTIFF:

4

MICHAEL RAFALKO, ESQUIRE

5   KATHERINE MOONEY, ATTORNEY AT LAW

6

ON BEHALF OF DEFENDANT:

7

JULIA SKYLAR, ATTORNEY AT LAW

8   YURI VORONIN, ESQUIRE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|  |  |  |
|---|---|---|
|  | 1 | LOS ANGELES, CALIFORNIA; WEDNESDAY, APRIL 10, 2019 |
|  | 2 | A.M. SESSION |
|  | 3 | - - - |
|  | 4 |  |
| 11:07:42 | 5 | THE CLERK:  Calling Item 1, CV-19-00662: |
| 11:07:45 | 6 | Transamerica Life Insurance Company versus Vladimir |
|  | 7 | Lukashin. |
| 11:07:49 | 8 | Counsel, please make your appearances. |
| 11:07:51 | 9 | MS. SKYLAR:  Good morning, Your Honor. |
| 11:07:52 | 10 | Julia Skylar for the defendant Lukashin. |
| 11:07:54 | 11 | MR. VORONIN:  Good morning, Your Honor. |
| 11:07:59 | 12 | Yuri Voronin for defendants Robert Parkens |
| 11:08:02 | 13 | and Golden Age Home Care. |
| 11:08:04 | 14 | MR. RAFALKO:  Good morning, Your Honor. |
| 11:08:04 | 15 | Michael Rafalko on behalf of plaintiff |
| 11:08:07 | 16 | Transamerica.  And I'm joined in the office today by my |
| 11:08:11 | 17 | colleague Katharine Mooney. |
| 11:08:14 | 18 | THE COURT:  Can you hear me now, |
| 11:08:15 | 19 | Mr. Rafalko? |
| 11:08:18 | 20 | MR. RAFALKO:  Yes, sir, I can very well. |
| 11:06:21 | 21 | THE COURT:  Okay.  Good.  So this is a |
| 11:08:22 | 22 | status conference, and it's designed to give the Court |
| 11:08:26 | 23 | some understanding of the case beyond the pleadings.  No |
| 11:08:33 | 24 | decisions of any consequence will be made at the status |
| 11:08:39 | 25 | conference.  It's more informational and managerial. |

| | | |
|---|---|---|
| 11:08:47 | 1 | So could you tell me, Mr. Rafalko, what your |
| 11:08:51 | 2 | evidence is at this point if the case were to be tried |
| 11:08:58 | 3 | now. |
| 11:08:59 | 4 | I understand the outline is that the |
| 11:09:04 | 5 | defendant made a claim.  The company paid the claim, or |
| 11:09:12 | 6 | paid a substantial amount of money toward the claim, and |
| 11:09:18 | 7 | is now attempting to get back what it paid because it |
| 11:09:26 | 8 | claims that the defendant, along with certain |
| 11:09:31 | 9 | caregivers, defrauded her -- defrauded the company.  Is |
| 11:09:35 | 10 | that essentially it? |
| 11:09:38 | 11 | MR. RAFALKO:  Yes, that's absolutely |
| 11:09:41 | 12 | correct, Your Honor. |
| 11:09:41 | 13 | THE COURT:  So what evidence do you have now |
| 11:09:46 | 14 | that would establish your case? |
| 11:09:49 | 15 | MR. RAFALKO:  Certainly, Your Honor. |
| 11:09:51 | 16 | I think what probably sets this case apart |
| 11:09:54 | 17 | from other fraud cases over which the Court may have |
| 11:09:58 | 18 | presided is the fact that this was an investigation that |
| 11:10:01 | 19 | was conducted by the company over a truly protracted |
| 11:10:05 | 20 | period of time, more than a year in fact. |
| 11:10:07 | 21 | Over the course of that more than a year |
| 11:10:09 | 22 | period, there were multiple rounds of surveillance that |
| 11:10:13 | 23 | were obtained on both Mr. Lukashin, who is the lead |
| 11:10:17 | 24 | defendant in this case and was insured under |
| 11:10:19 | 25 | Transamerica's policy, and also on Ms. Faerman, who |

11:10:23  1    purported to be the caregiver who was supposedly

11:10:27  2    providing care to Mr. Lukashin and charging him for

11:10:30  3    care, which was then being reimbursed by Transamerica.

11:10:33  4         In terms of having obtained the surveillance

11:10:37  5    video what was observed was the fact that Mr. Lukashin

11:10:40  6    was report -- and Ms. Faerman were reporting to

11:10:46  7    Transamerica that he was -- suffered from fairly severe

11:10:51  8    functional deficit and inability to perform his

11:10:54  9    activities of daily living.

11:10:56  10        What was observed on video, by contrast, was

11:11:00  11   completely the opposite of that, that in fact he was a

11:11:04  12   perfectly normal, functioning member of society with

11:11:08  13   absolutely no functional limitations whatsoever.

11:11:11  14        In addition to that, on multiple occasions

11:11:14  15   Mr. Lukashin was required to meet either with assessors

11:11:18  16   on behalf of the company who would come to periodically

11:11:23  17   re-assess him for benefits, essentially to determine

11:11:26  18   whether he had a continuing eligibility to receive

11:11:30  19   benefits.  And in conjunction with those meetings,

11:11:33  20   Mr. Lukashin repeatedly and uniformly feigned an

11:11:36  21   inability to perform his activities of daily living,

11:11:40  22   which is the trigger for the policy, and then

11:11:42  23   immediately thereafter, as soon as the assessment would

11:11:45  24   conclude, would be observed on video behaving in a

11:11:49  25   manner that was completely different than what he had

| | | |
|---|---|---|
| 11:11:51 | 1 | just minutes before reported to the medical provider. |
| 11:11:54 | 2 | THE COURT:  Can you define with more |
| 11:11:59 | 3 | specificity what the policies means activities and daily |
| 11:12:10 | 4 | living, and what was the observation of the -- of |
| 11:12:21 | 5 | Lukashin when these follow-up visit were made by |
| 11:12:26 | 6 | Transamerica and how -- how much time afterwards was he |
| 11:12:33 | 7 | observed acting differently.  In other words, on the |
| 11:12:37 | 8 | video what is he observed doing and what did he claim |
| 11:12:43 | 9 | that he wasn't able to do? |
| 11:12:47 | 10 | MR. RAFALKO:  Certainly, Your Honor. |
| 11:12:49 | 11 | So within the policy that is held by |
| 11:12:52 | 12 | Mr. Lukashin, there are six activities of daily living, |
| 11:12:56 | 13 | which I will define in just a moment.  And in order to |
| 11:13:00 | 14 | trigger benefits, an insured has to be unable to perform |
| 11:13:04 | 15 | two of those activities of daily living without what's |
| 11:13:09 | 16 | called substantial assistance from a caregiver, which |
| 11:13:12 | 17 | means a caregiver that is either providing hands-on or |
| 11:13:15 | 18 | stand-by-care, somebody who has to be actually |
| 11:13:17 | 19 | physically touching or in the absolute immediate |
| 11:13:20 | 20 | vicinity of the insured. |
| 11:13:21 | 21 | The six activities of daily living are |
| 11:13:24 | 22 | bathing, cognizance, dressing, eating, toileting, and |
| 11:13:28 | 23 | transferring. |
| 11:13:29 | 24 | Mr. Lukashin consistently reported an |
| 11:13:34 | 25 | inability to perform at least four of those.  And really |

11:13:37   1   what the root of the claim was, was that he had had a

11:13:42   2   slip-and-fall at a grocery store some years prior which

11:13:46   3   resulted in a nondisplaced fracture of the wrist and

11:13:50   4   ankle, which should have healed quickly.  But several

11:13:53   5   years after that event had taken place, he was still

11:13:57   6   reporting to Transamerica that he was unable to walk

11:13:59   7   without using a cane, without using a wrist brace and

11:14:04   8   with a severe limp.

11:14:06   9           I will represent to you that the only time

11:14:08   10   over approximately 30 or more dates of surveillance that

11:14:14   11   were obtained by the company throughout the course of

11:14:17   12   it's year-long investigation -- so we're talking about a

11:14:19   13   truly significant volume of surveillance here -- the

11:14:25   14   only time Mr. Lukashin was ever observed using a wrist

11:14:29   15   brace or a cane was on the one occasion when

11:14:32   16   Transamerica sent him, in accordance with its

11:14:35   17   contractural right under the policy, for an independent

11:14:36   18   medical examination with a doctor that's not affiliated

11:14:39   19   either with Transamerica or Mr. Lukashin.

11:14:41   20           On that occasion only, he was using braces,

11:14:47   21   purporting to walk with a limp and behaving in a manner

11:14:50   22   that would have been befitting someone who had a true

11:14:52   23   and legitimate need for care.

11:14:54   24           Of course, shortly thereafter, he was

11:14:57   25   observed taking his two dogs on a long walk up a steeply

| | |
|---|---|
| 11:15:03 | 1 |
| 11:15:05 | 2 |
| 11:15:06 | 3 |
| 11:15:08 | 4 |
| 11:15:09 | 5 |
| 11:15:10 | 6 |
| 11:15:11 | 7 |
| 11:15:17 | 8 |
| 11:15:21 | 9 |
| 11:15:26 | 10 |
| 11:15:28 | 11 |
| 11:15:32 | 12 |
| 11:15:35 | 13 |
| 11:15:39 | 14 |
| 11:15:43 | 15 |
| 11:15:46 | 16 |
| 11:15:50 | 17 |
| 11:15:52 | 18 |
| 11:15:56 | 19 |
| 11:15:58 | 20 |
| 11:16:02 | 21 |
| 11:16:03 | 22 |
| 11:16:08 | 23 |
| 11:16:16 | 24 |
| 11:16:21 | 25 |

inclined hill and engaging in a whole host of other
activities.

      THE COURT:  How shortly after that visit was
that observation made?

      MR. RAFALKO:  I'm sorry, Your Honor.  What
was that?

      THE COURT:  How shortly after Lukashin
claimed in the visit that he wasn't able to walk was he
observed walking his dogs up the hill?

      MR. RAFALKO:  Either the very same day or
the very next day.  But irrespective of which it was, in
each instance where the company obtained surveillance,
it would typically do five or seven days in a particular
stretch, and so you would have a consistent pattern
throughout the course of each surveillance period where
you would have Mr. Lukashin exhibiting no functional
limitation whatsoever, then going to a medical
appointment and feigning a functional limitation and
then immediately thereafter for some period of days
displaying the same conduct where he had no limitation
whatsoever.

      THE COURT:  What about the six factors that
you mentioned?  This ambulatory function was only one of
them.  Did you say that he had to show that he couldn't
perform two of the six?

| | | |
|---|---|---|
| 11:16:24 | 1 | MR. RAFALKO:  That's correct, Your Honor. |
| 11:16:26 | 2 | The gist of this is you can extrapolate from other |
| 11:16:32 | 3 | movements that you witness him performing that he can do |
| 11:16:35 | 4 | other certain functions.  So, for instance, so if |
| 11:16:38 | 5 | Mr. Lukashin were to claim that he can't use the toilet |
| 11:16:41 | 6 | because he can't get on and off of the commode and yet |
| 11:16:45 | 7 | we see him getting into and out of a car and driving the |
| 11:16:48 | 8 | car, which is essentially the exact same movement, then |
| 11:16:52 | 9 | you can say with a very high degree of certainly that |
| 11:16:53 | 10 | the representation that he cannot get on and off the |
| 11:16:56 | 11 | commode is in fact false. |
| 11:16:58 | 12 | THE COURT:  What about some of the other |
| 11:17:00 | 13 | factors?  Can you tell me how the evidence were to play |
| 11:17:04 | 14 | out in those regards? |
| 11:17:08 | 15 | MR. RAFALKO:  Certainly, Your Honor.  So |
| 11:17:12 | 16 | let's use dressing as another example.  Mr. Lukashin |
| 11:17:15 | 17 | claimed that due to issues with his wrist and leg he was |
| 11:17:17 | 18 | unable to dress himself because he couldn't bend in a |
| 11:17:19 | 19 | way that would be befitting of being able to, for |
| 11:17:23 | 20 | instance, put on trousers or tie his shoes; yet we have |
| 11:17:29 | 21 | plenty of surveillance video of him, while he's out |
| 11:17:31 | 22 | walking his dogs, he's doing things like bending over to |
| 11:17:34 | 23 | tie his shoes, bending over to pick up items from the |
| 11:17:35 | 24 | ground such as dog do-do, for lack of a better way to |
| 11:17:40 | 25 | put that, and, you know, bending over at the waist and |

| | | |
|---|---|---|
| 11:17:45 | 1 | engaging in a whole other host of movements that would |
| 11:17:49 | 2 | allow, you know, any reasonable person to say with a |
| 11:17:52 | 3 | high degree of certainty, you know, he could perform the |
| 11:17:57 | 4 | activity of daily living.  Not to mention when he would |
| 11:18:00 | 5 | go, for instance, for a reassessment or for the IME that |
| 11:18:03 | 6 | I described a couple of minutes ago, you would see him |
| 11:18:07 | 7 | on video approaching those appointment, because |
| 11:18:11 | 8 | Transamerica conducted surveillance in conjunction with |
| 11:18:14 | 9 | the appointment itself, and you would see him, I mean, |
| 11:18:18 | 10 | purporting to limp in a way befitting somebody who can |
| 11:18:21 | 11 | hardly move, someone who could hardly even get out of a |
| 11:18:25 | 12 | chair, and then only a very short time later, either |
| 11:18:29 | 13 | later the same day or the very next day, you would see |
| 11:18:32 | 14 | him going on a long walk, walking his two dogs.  I mean, |
| 11:18:35 | 15 | it's two observations that are so diametrically opposed |
| 11:18:41 | 16 | to one another that they couldn't possibly be |
| 11:18:47 | 17 | reconciled. |
| 11:18:48 | 18 | THE COURT:  Let me switch topics for a |
| 11:18:50 | 19 | moment.  When he made the claim with Transamerica, when |
| 11:18:59 | 20 | Lukashin made the claim, did he support it with |
| 11:19:04 | 21 | medical -- a medical letter or report, a doctor's |
| 11:19:11 | 22 | report? |
| 11:19:13 | 23 | MR. RAFALKO:  So Transamerica obtained his |
| 11:19:16 | 24 | medical records out of the gate, I believe, which did |
| 11:19:19 | 25 | show the nondisplaced fracture that I mentioned at the |

11:19:22   1   beginning.  He did in fact at the beginning of his claim

11:19:25   2   period have a fracture.  However, within a period of

11:19:29   3   about, oh, say, three months of that the fracture should

11:19:33   4   have healed sufficiently to the point where he would no

11:19:35   5   longer be eligible to receive benefits.

11:19:38   6          THE COURT:  Well, is there any medical

11:19:40   7   evidence regarding whether the fracture -- was it just

11:19:46   8   in the wrist, or where else was it?  Leg -- and leg and

11:19:49   9   wrist.  Is there any medical evidence regarding the

11:19:57   10  healing process of the fracture?

11:20:01   11         MR. RAFALKO:  Not that I have seen more

11:20:03   12  recently, Your Honor.  There's nothing that I have seen

11:20:06   13  that would support the notion that the level of severity

11:20:11   14  or really anything approaching it that has been claimed

11:20:15   15  by Mr. Lukashin and observed on video is remotely

11:20:18   16  consistent with what we have seen.

11:20:21   17         THE COURT:  How old a person is Lukashin?

11:20:26   18         MR. RAFALKO:  I'm sorry?

11:20:27   19         THE COURT:  How old is Lukashin?

11:20:30   20         MR. RAFALKO:  Ms. Skylar would know better

11:20:33   21  than me.  But my rough guess would be 71 or thereabouts.

11:20:37   22         THE COURT:  And over how -- how long did

11:20:42   23  Transamerica make payments?

11:20:47   24         MR. RAFALKO:  For a period of several years,

11:20:48   25  Your Honor.  I don't have the exact date in front of me,

| | | |
|---|---|---|
| 11:20:50 | 1 | it was I want to say 2015, or so, onset of the claim. |
| 11:20:57 | 2 | THE COURT:  When he went to these IMEs, were |
| 11:21:02 | 3 | those IMEs with doctors that Transamerica asked him to |
| 11:21:06 | 4 | visit or were those his own doctors? |
| 11:21:10 | 5 | MR. RAFALKO:  So there were two separate |
| 11:21:13 | 6 | types, Your Honor.  There's the IME, which is an |
| 11:21:16 | 7 | independent medical examination, that's with a doctor. |
| 11:21:19 | 8 | He also underwent a series of what are called |
| 11:21:21 | 9 | reassessments, which is a process that -- well, not to |
| 11:21:26 | 10 | get too granular, but because these are tax qualified, |
| 11:21:30 | 11 | what are called tax qualified policies, the federal |
| 11:21:33 | 12 | government requires that he be reassessed at least once |
| 11:21:36 | 13 | a year by an assessor, which is typically a nurse.  And |
| 11:21:40 | 14 | in those instances, there would be a nurse as opposed to |
| 11:21:42 | 15 | a doctor, who would come to his home and conduct a whole |
| 11:21:46 | 16 | panel of inquiry and require him to do movements and |
| 11:21:50 | 17 | things like that that takes a number of hours at the |
| 11:21:55 | 18 | home. |
| 11:21:58 | 19 | THE COURT:  And with regard to Faerman, the |
| 11:22:04 | 20 | caregiver, what is the evidence with regard to Faerman? |
| 11:22:13 | 21 | MR. RAFALKO:  So Ms. Faerman was |
| 11:22:15 | 22 | consistently throughout most of the period of the claim |
| 11:22:20 | 23 | purporting to be Mr. Lukashin's caregiver and purporting |
| 11:22:25 | 24 | to sign forms that reported care that she allegedly |
| 11:22:31 | 25 | provided for Mr. Lukashin, and then making it so that |

11:22:35   1    those forms would be submitted to Transamerica.

11:22:38   2           Ms. Faerman was -- so Transamerica conducted

11:22:44   3    surveillance on Ms. Faerman in addition to Mr. Lukashin,

11:22:48   4    and on no date, not even one date, among all of the

11:22:52   5    dates on which surveillance was performed, was she ever

11:22:55   6    observed providing care for Mr. Lukashin.

11:22:58   7           Moreover -- and this is probably even more

11:23:01   8    of what I would consider to be a smoking gun type of

11:23:06   9    observation, Your Honor -- there were a whole host of

11:23:09   10   dates on which Ms. Faerman and Mr. Lukashin weren't even

11:23:14   11   together at the same place.  She was 30 miles away, and

11:23:20   12   yet not withstanding the fact that they never even

11:23:23   13   crossed paths or even came close to crossing paths on

11:23:27   14   any particular date, she would still complete forms that

11:23:31   15   she had provided seven or eight hours of care for

11:23:34   16   Mr. Lukashin, which would then be submitted to

11:23:36   17   Transamerica, which Transamerica would then pay.

11:23:40   18          THE COURT:  And is Faerman a professional

11:23:44   19   caregiver?

11:23:47   20          MR. RAFALKO:  I believe she is -- would be

11:23:49   21   considered to be an informal caregiver, although I don't

11:23:53   22   have information regarding her life insurer

11:23:58   23   certification to the extent she has that.

11:24:01   24          THE COURT:  And was she employed by Golden

11:24:04   25   Age?

| 11:24:05 | 1 | MR. RAFALKO:  That's our understanding, Your |
| 11:24:06 | 2 | Honor. |
| 11:24:07 | 3 | THE COURT:  And do you know of any |
| 11:24:09 | 4 | relationship between Faerman and Lukashin? |
| 11:24:15 | 5 | MR. RAFALKO:  Well, Your Honor, I can give |
| 11:24:17 | 6 | you my informal take on that, which would be that the |
| 11:24:22 | 7 | two of them are friends or friendly, or possibly |
| 11:24:27 | 8 | involved in a romantic relationship.  They are certainly |
| 11:24:33 | 9 | observed together on a fair number of dates.  But as |
| 11:24:36 | 10 | stated on no date is she ever observed providing any |
| 11:24:41 | 11 | care to him.  And on quite a few number of dates when |
| 11:24:43 | 12 | they submitted for care, she wasn't even in the same |
| 11:24:46 | 13 | place. |
| 11:24:46 | 14 | THE COURT:  And has there been any criminal |
| 11:24:55 | 15 | investigation that involves these matters?  I mean, is |
| 11:25:00 | 16 | your investigation an offshoot of a criminal |
| 11:25:05 | 17 | investigation? |
| 11:25:06 | 18 | MR. RAFALKO:  Well, this is a situation |
| 11:25:08 | 19 | where there has been a fraud report that has been made |
| 11:25:11 | 20 | to the California Department of Insurance, and then from |
| 11:25:17 | 21 | there it is within their discretion, you know, what they |
| 11:25:21 | 22 | would do with the matter.  And as of this date, I don't |
| 11:25:25 | 23 | know what, you know, where their process is. |
| 11:25:31 | 24 | THE COURT:  And so your witnesses would be |
| 11:25:35 | 25 | any person who made observations through video or |

| | | |
|---|---|---|
| 11:25:43 | 1 | otherwise, the IME doctors and/or nurses and the |
| 11:25:56 | 2 | documentary evidence, I mean, at least at this point? |
| 11:25:58 | 3 | MR. RAFALKO:  That's correct, Your Honor.  I |
| 11:26:00 | 4 | believe there would be certainly the four parties. |
| 11:26:02 | 5 | There would be the assessing nurses.  There would be the |
| 11:26:06 | 6 | IME doctor.  There would be the individuals who |
| 11:26:08 | 7 | performed the surveillance and -- well, the Court may be |
| 11:26:12 | 8 | headed in this direction.  But I do believe there's the |
| 11:26:15 | 9 | possibility for two expert witnesses that we would be |
| 11:26:19 | 10 | considering, and I don't know what the other parties are |
| 11:26:22 | 11 | thinking in that respect. |
| 11:26:23 | 12 | THE COURT:  I see.  All right.  Well, I'm |
| 11:26:24 | 13 | now going to ask each lawyer for the defendants to tell |
| 11:26:30 | 14 | me how they intend to defend the case. |
| 11:26:35 | 15 | So first of all, I will ask Ms. Skylar. |
| 11:26:39 | 16 | Well, who represents Lukashin, you, |
| 11:26:41 | 17 | Ms. Skylar? |
| 11:26:43 | 18 | MS. SKYLAR:  Yes, Your Honor. |
| 11:26:44 | 19 | THE COURT:  Would you take the lectern. |
| 11:26:49 | 20 | I mean, Transamerica has outlined its |
| 11:26:52 | 21 | position.  What is your position, at least at this |
| 11:26:55 | 22 | point, going to be? |
| 11:26:57 | 23 | MS. SKYLAR:  My client has suffered, and has |
| 11:26:59 | 24 | been continuously suffering to today, severe physical |
| 11:27:03 | 25 | and mental impairment. |

| | | |
|---|---|---|
| 11:27:06 | 1 | Speaking of his wrist, he just had a surgery |
| 11:27:10 | 2 | that he was postponing because he had -- let me back up |
| 11:27:15 | 3 | a little bit.  So my client actually initiated this |
| 11:27:19 | 4 | claim back in March of 2017, subsequent to his fall |
| 11:27:24 | 5 | which occurred in December of 2016.  After that it's |
| 11:27:33 | 6 | correct he had suffered multiple fractures.  And the |
| 11:27:36 | 7 | fracture that was referred earlier by plaintiff's |
| 11:27:40 | 8 | counsel, he just had a surgery to his hand because it -- |
| 11:27:43 | 9 | it did not heal properly.  And the reason why such a |
| 11:27:48 | 10 | long postponement of his surgical procedures that in |
| 11:27:53 | 11 | between he had at least four or five other urological |
| 11:27:59 | 12 | problems and procedures for which he's been constantly |
| 11:28:02 | 13 | treated and is part the reason why he was unable to |
| 11:28:07 | 14 | complete his activities daily living during that period |
| 11:28:11 | 15 | of time. |
| 11:28:12 | 16 | THE COURT:  What type of urological |
| 11:28:16 | 17 | procedures did he have? |
| 11:28:19 | 18 | MS. SKYLAR:  Mr. Lukashin, I believe, went |
| 11:28:21 | 19 | for simple hernia surgery -- hernia repair surgery, |
| 11:28:26 | 20 | which was not healing properly.  He had severe pain |
| 11:28:30 | 21 | because of the nerve damage that was as the result of |
| 11:28:34 | 22 | that surgery. |
| 11:28:36 | 23 | In addition to that, he had it repaired on I |
| 11:28:40 | 24 | think two or three different occasions with multiple |
| 11:28:44 | 25 | surgeons, and as the result of that and severity, he |

| | | |
|---|---|---|
| 11:28:49 | 1 | unfortunately had testicular removal as to complication |
| 11:28:55 | 2 | of his hernia.  So that elevated to the level of his |
| 11:29:00 | 3 | disability. |
| 11:29:01 | 4 | THE COURT:  Was this -- were these things |
| 11:29:04 | 5 | part of what was reported to Transamerica to support his |
| 11:29:10 | 6 | claim? |
| 11:29:11 | 7 | MS. SKYLAR:  I was not involved in his claim |
| 11:29:14 | 8 | for his -- his pre-litigation claim.  But my |
| 11:29:21 | 9 | understanding that all medical impairments were |
| 11:29:24 | 10 | disclosed to Transamerica to support his effect and |
| 11:29:29 | 11 | activities of daily living. |
| 11:29:32 | 12 | THE COURT:  I see.  All right.  And what |
| 11:29:34 | 13 | about Mr. Voronin, you represent Faerman? |
| 11:29:45 | 14 | MR. VORONIN:  No, Your Honor, I do not.  As |
| 11:29:47 | 15 | far I know, Ms. Faerman has not been served yet and has |
| 11:29:49 | 16 | not appeared.  I represent defendants Golden Age Home |
| 11:29:53 | 17 | Care and Robert Parkens. |
| 11:29:55 | 18 | THE COURT:  I see.  And what is your |
| 11:29:56 | 19 | position thus far? |
| 11:29:58 | 20 | MR. VORONIN:  Well, Your Honor, going back |
| 11:29:58 | 21 | to what plaintiff's counsel said, it appears that their |
| 11:30:01 | 22 | evidence is video surveillance of Lukashin and of |
| 11:30:04 | 23 | Faerman.  I represent neither of them. |
| 11:30:06 | 24 | There is no direct contractual relationship |
| 11:30:09 | 25 | between either Golden Age or Parkens and the plaintiff. |

```
11:30:13   1              THE COURT:  There's no contractual between
11:30:18   2   Golden Age and Faerman?
11:30:19   3              MR. GOLDMAN:  No.  Faerman was affiliated
11:30:21   4   with Golden Age.
11:30:22   5              THE COURT:  And Golden Age is what type of
11:30:24   6   entity?
11:30:25   7              MR. VORONIN:  Golden Age effectively is an
11:30:28   8   agency that pairs people requiring some level of basic
11:30:31   9   care with people who can provide that care.
11:30:35  10              THE COURT:  And when that contact is made,
11:30:42  11   does the patient pay Golden Age who then pays Faerman,
11:30:51  12   or does the patient pay Faerman who then may turn over a
11:30:58  13   part of her fee to Golden Age?  How does it operate?
11:31:03  14              MR. VORONIN:  I'm not a hundred percent
11:31:05  15   certain at this time, Your Honor, but I believe that the
11:31:06  16   way that it works is that the beneficiary retains a
11:31:09  17   caregiver.  Then the beneficiary pays the agency -- in
11:31:13  18   this case Golden Age.  And Golden Age pays Faerman.
11:31:18  19              The exact sequence of which happens when I'm
11:31:23  20   not clear about.  But that's the loop.
11:31:26  21              THE COURT:  Thank you.  All right.  Let me
11:31:26  22   get back to you, Mr. Rafalko.  Is what has been said by
11:31:39  23   the defendants known to you?
11:31:43  24              MR. RAFALKO:  Well, I can say this, Your
11:31:46  25   Honor, I have not seen any of the medical records that
```

| | | |
|---|---|---|
| 11:31:50 | 1 | would support what Ms. Sklar said.  I'm not saying that |
| 11:31:56 | 2 | the procedures she has referenced haven't taken place. |
| 11:32:00 | 3 | But I am saying I have not seen those records. |
| 11:32:03 | 4 | I'm also saying that notwithstanding the |
| 11:32:05 | 5 | possible fact that those may exist, you know, the fact |
| 11:32:08 | 6 | that Mr. Lukashin might have had a procedure is not |
| 11:32:14 | 7 | there on the issue of whether or not he can actually |
| 11:32:17 | 8 | perform his activities of daily living.  And the fact is |
| 11:32:20 | 9 | that he and Ms. Faerman reported consistently that he |
| 11:32:25 | 10 | could not.  And the video shows that he could perform |
| 11:32:27 | 11 | those activities. |
| 11:32:28 | 12 | THE COURT:  But the essence or the basis for |
| 11:32:31 | 13 | the claim was the wrist and leg fracture, correct? |
| 11:32:37 | 14 | MR. RAFALKO:  I'm sorry.  The -- |
| 11:32:39 | 15 | THE COURT:  The basis of the original claim |
| 11:32:42 | 16 | was the wrist and leg fracture, correct? |
| 11:32:47 | 17 | MR. RAFALKO:  Yes, sir. |
| 11:32:48 | 18 | THE COURT:  And does -- do Transamerica's |
| 11:32:55 | 19 | records show that that claim was updated with the |
| 11:33:00 | 20 | information that Ms. Skylar related a few minutes ago? |
| 11:33:06 | 21 | MR. RAFALKO:  I have not seen those records, |
| 11:33:09 | 22 | Your Honor. |
| 11:33:10 | 23 | THE COURT:  And assuming that the claim was |
| 11:33:20 | 24 | not updated with that information, what would be your |
| 11:33:29 | 25 | position?  In other words, if the original claim was |

| | | |
|---|---|---|
| 11:33:33 | 1 | based upon the leg and wrist fracture, and your evidence |
| 11:33:41 | 2 | would allow a fact finder to conclude that that wasn't |
| 11:33:52 | 3 | the basis of his disability, could an insured such as |
| 11:34:00 | 4 | Lukashin offer this additional medical testimony to |
| 11:34:06 | 5 | support the payments even if that information had never |
| 11:34:14 | 6 | been transmitted to Transamerica prior to this lawsuit? |
| 11:34:19 | 7 | MR. RAFALKO:  No, I don't believe that it |
| 11:34:21 | 8 | could, Your Honor, because the fact of the existence of |
| 11:34:25 | 9 | a medical condition or the existence of a particular |
| 11:34:28 | 10 | procedure is not the test for whether Mr. Lukashin would |
| 11:34:33 | 11 | be eligible to receive benefits under the policy. |
| 11:34:36 | 12 | Now, we certainly want to see those records. |
| 11:34:38 | 13 | And I'm sure, you know, Ms. Skylar would probably want |
| 11:34:42 | 14 | us to see them.  But at the same time, the existence of |
| 11:34:45 | 15 | a particular medical condition has really no bearing on |
| 11:34:48 | 16 | whether or not the insured can actually perform an |
| 11:34:54 | 17 | activity of daily living, which is the test that's |
| 11:34:55 | 18 | appropriate under the policy. |
| 11:34:56 | 19 | THE COURT:  I see.  All right.  I'm going to |
| 11:34:58 | 20 | set a trial date, and the parties can engage in whatever |
| 11:35:03 | 21 | discovery they think appropriate.  The trial will be in |
| 11:35:08 | 22 | the middle of October. |
| 11:35:11 | 23 | What date would a Tuesday be there? |
| 11:35:13 | 24 | THE CLERK:  That would be October the 22, |
| 11:35:17 | 25 | 2019. |

| | | |
|---|---|---|
| 11:35:17 | 1 | THE COURT:  Yes.  October 22, 2019, at |
| 11:35:20 | 2 | 9 a.m., with a pretrial conference the Monday before. |
| 11:35:25 | 3 | THE CLERK:  Yes, Your Honor.  Just a moment, |
| 11:35:27 | 4 | please.  You know, Your Honor, October 14th is a Monday |
| 11:35:34 | 5 | but it is a holiday.  So I will make the pretrial on |
| 11:35:37 | 6 | October 7th. |
| 11:35:38 | 7 | THE COURT:  Yes.  October 7th is the |
| 11:35:40 | 8 | pretrial conference at 1:30. |
| 11:35:47 | 9 | And trial is October 20th -- which is it, |
| 11:35:53 | 10 | 22nd? |
| 11:35:54 | 11 | THE CLERK:  That's correct, Your Honor, at |
| 11:35:55 | 12 | 9 a.m. |
| 11:35:56 | 13 | THE COURT:  And either side can make a |
| 11:35:58 | 14 | dispositive motion at any time they deem appropriate. |
| 11:36:08 | 15 | The discovery cutoff will be at the end of August. |
| 11:36:19 | 16 | THE CLERK:  That will be August 26, 2019. |
| 11:36:22 | 17 | THE COURT:  All right.  Thank you.  Thank |
| 11:36:23 | 18 | you. |
| | 19 | THE CLERK:  All rise.  Court is now |
| | 20 | adjourned. |
| | 21 | (PROCEEDINGS CONCLUDED.) |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

```
 1

 2

 3                     CERTIFICATE OF REPORTER

 4

 5   COUNTY OF LOS ANGELES        )

 6                                )  SS.

 7   STATE OF CALIFORNIA          )

 8

 9   I, SHERI S. KLEEGER, OFFICIAL COURT REPORTER, IN AND FOR

10   THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

11   DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

12   TO SECTION 753, TITLE 28, UNITED STATES CODE, THE

13   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

14   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

15   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE

16   FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE

17   JUDICIAL CONFERENCE OF THE UNITED STATES.

18

19

20   DATE:  NOVEMBER 4, 2019

21

22   /S/_____

23   SHERI S. KLEEGER, CSR

24   FEDERAL OFFICIAL COURT REPORTER

25
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**/**

/S [1] - 20:22

**1**

1 [1] - 1:5
14th [1] - 19:4
1:30 [1] - 19:8

**2**

2015 [1] - 10:1
2016 [1] - 14:5
2017 [1] - 14:4
2019 [2] - 18:25, 19:1, 19:16, 20:20
20th [1] - 19:9
22 [2] - 18:24, 19:1
22nd [1] - 19:10
26 [1] - 19:14
28 [1] - 20:12

**3**

30 [2] - 5:10, 11:11

**4**

4 [1] - 20:20

**7**

71 [1] - 9:21
753 [1] - 20:12
7th [2] - 19:6, 19:7

**9**

9 [2] - 19:2, 19:12

**A**

a.m [2] - 19:2, 19:12
able [3] - 4:9, 6:8, 7:19
ABOVE [1] - 20:15
ABOVE-ENTITLED [1] - 20:15
absolute [1] - 4:19
absolutely [2] - 2:11, 3:13
accordance [1] - 5:16

acting [1] - 4:7
activities [11] - 3:9, 3:21, 4:3, 4:12, 4:15, 4:21, 6:2, 14:14, 15:11, 17:8, 17:11
activity [2] - 8:4, 18:17
addition [3] - 3:14, 11:3, 14:23
additional [1] - 18:4
adjourned [1] - 19:20
affiliated [2] - 5:18, 16:3
afterwards [1] - 4:6
Age [12] - 1:13, 11:25, 15:16, 15:25, 16:2, 16:4, 16:5, 16:7, 16:11, 16:13, 16:18
agency [2] - 16:8, 16:17
ago [2] - 8:6, 17:20
allegedly [1] - 10:24
allow [2] - 8:2, 18:2
ambulatory [1] - 6:23
amount [1] - 2:6
AND [3] - 20:9, 20:13, 20:15
ANGELES [1] - 20:5
ankle [1] - 5:4
apart [1] - 2:16
appearances [1] - 1:8
appeared [1] - 15:16
appointment [3] - 6:18, 8:7, 8:9
approaching [2] - 8:7, 9:14
appropriate [3] - 18:18, 18:21, 19:14
assess [1] - 3:17
assessing [1] - 13:5
assessment [1] - 3:23
assessor [1] - 10:13
assessors [1] - 3:15
assistance [1] - 4:16
assuming [1] - 17:23
attempting [1] - 2:7
August [2] - 19:15, 19:16

**B**

based [1] - 18:1
basic [1] - 16:8
basis [3] - 17:12, 17:15, 18:3

bathing [1] - 4:22
bearing [1] - 18:15
befitting [3] - 5:22, 7:19, 8:10
beginning [2] - 9:1
behalf [2] - 1:15, 3:16
behaving [3] - 3:24, 5:21
bend [1] - 7:18
bending [3] - 7:22, 7:23, 7:25
beneficiary [2] - 16:16, 16:17
benefits [5] - 3:17, 3:19, 4:14, 9:5, 18:11
better [2] - 7:24, 9:20
between [4] - 12:4, 14:11, 15:25, 16:1
beyond [1] - 1:23
bit [1] - 14:3
brace [5] - 5:7, 5:15
braces [1] - 5:20

**C**

CALIFORNIA [2] - 20:7, 20:11
California [1] - 12:20
cane [2] - 5:7, 5:15
cannot [1] - 7:10
car [2] - 7:7, 7:8
care [11] - 3:2, 3:3, 4:18, 5:23, 10:24, 11:6, 11:15, 12:11, 12:12, 16:9
Care [2] - 1:13, 15:17
caregiver [8] - 3:1, 4:16, 4:17, 10:20, 10:23, 11:19, 11:21, 16:17
caregivers [1] - 2:9
case [7] - 1:23, 2:2, 2:14, 2:16, 2:24, 13:14, 16:18
cases [1] - 2:17
CENTRAL [1] - 20:10
certain [3] - 2:8, 7:4, 16:15
certainly [7] - 2:15, 4:10, 7:9, 7:15, 12:8, 13:4, 18:12
certainty [1] - 8:3
CERTIFICATE [1] - 20:3
certification [1] - 11:23
CERTIFY [1] - 20:11
chair [1] - 8:12

charging [1] - 3:2
claim [20] - 2:5, 2:6, 4:8, 5:1, 7:5, 8:19, 8:20, 9:1, 10:1, 10:22, 14:4, 15:6, 15:7, 15:8, 17:13, 17:15, 17:19, 17:23, 17:25
claimed [3] - 6:8, 8:17, 9:14
claims [1] - 2:8
clear [1] - 16:20
CLERK [6] - 1:5, 18:24, 19:3, 19:11, 19:16, 19:19
client [2] - 13:23, 14:3
close [1] - 11:13
CODE [1] - 20:12
cognizance [1] - 4:22
colleague [1] - 1:17
commode [2] - 7:6, 7:11
Company [1] - 1:6
company [6] - 2:5, 2:9, 2:19, 3:16, 5:11, 6:12
complete [2] - 11:14, 14:14
completely [2] - 3:11, 3:25
complication [1] - 15:1
conclude [2] - 3:24, 18:2
CONCLUDED [1] - 19:21
condition [2] - 18:9, 18:15
conduct [2] - 6:20, 10:15
conducted [3] - 2:19, 8:8, 11:2
CONFERENCE [1] - 20:17
conference [4] - 1:22, 1:25, 19:2, 19:8
CONFORMANCE [1] - 20:16
conjunction [2] - 3:19, 8:8
consequence [1] - 1:24
consider [1] - 11:8
considered [1] - 11:21
considering [1] - 13:10
consistent [2] - 6:14, 9:16

consistently [3] - 4:24, 10:22, 17:9
constantly [1] - 14:12
contact [1] - 16:10
continuing [1] - 3:18
continuously [1] - 13:24
contractual [2] - 15:24, 16:1
contractural [1] - 5:17
contrast [1] - 3:10
CORRECT [1] - 20:13
correct [7] - 2:12, 7:1, 13:3, 14:6, 17:13, 17:16, 19:11
Counsel [1] - 1:8
counsel [2] - 14:8, 15:21
COUNTY [1] - 20:5
couple [1] - 8:6
course [4] - 2:21, 5:11, 5:24, 6:15
COURT [42] - 1:18, 1:21, 2:13, 4:2, 6:3, 6:7, 6:22, 7:12, 8:18, 9:6, 9:17, 9:19, 9:22, 10:2, 10:19, 11:18, 11:24, 12:3, 12:14, 12:24, 13:12, 13:19, 14:16, 15:4, 15:12, 15:18, 16:1, 16:5, 16:10, 16:21, 17:12, 17:15, 17:18, 17:23, 18:19, 19:1, 19:7, 19:13, 19:17, 20:9, 20:10, 20:24
court [1] - 19:19
Court [3] - 1:22, 2:17, 13:7
criminal [2] - 12:14, 12:16
crossed [1] - 11:13
crossing [1] - 11:13
CSR [1] - 20:23
cutoff [1] - 19:15
CV-19-00662 [1] - 1:5

**D**

daily [11] - 3:9, 3:21, 4:3, 4:12, 4:15, 4:21, 8:4, 14:14, 15:11, 17:8, 18:17
damage [1] - 14:21
date [8] - 9:25, 11:4,

11:14, 12:10, 12:22, 18:20, 18:23
**DATE** [1] - 20:20
**dates** [5] - 5:10, 11:5, 11:10, 12:9, 12:11
**days** [2] - 6:13, 6:19
**December** [1] - 14:5
**decisions** [1] - 1:24
**deem** [1] - 19:14
**defend** [1] - 13:14
**defendant** [4] - 1:10, 2:5, 2:8, 2:24
**defendants** [4] - 1:12, 13:13, 15:16, 16:23
**deficit** [1] - 3:8
**define** [2] - 4:2, 4:13
**defrauded** [2] - 2:9
**degree** [2] - 7:9, 8:3
**Department** [1] - 12:20
**described** [1] - 8:6
**designed** [1] - 1:22
**determine** [1] - 3:17
**diametrically** [1] - 8:15
**different** [2] - 3:25, 14:24
**differently** [1] - 4:7
**direct** [1] - 15:24
**direction** [1] - 13:8
**disability** [2] - 15:3, 18:3
**disclosed** [1] - 15:10
**discovery** [2] - 18:21, 19:15
**discretion** [1] - 12:21
**displaying** [1] - 6:20
**dispositive** [1] - 19:14
**DISTRICT** [2] - 20:10, 20:11
**DO** [1] - 20:11
**do-do** [1] - 7:24
**doctor** [4] - 5:18, 10:7, 10:15, 13:6
**doctor's** [1] - 8:21
**doctors** [3] - 10:3, 10:4, 13:1
**documentary** [1] - 13:2
**dog** [1] - 7:24
**dogs** [4] - 5:25, 6:9, 7:22, 8:14
**dress** [1] - 7:18
**dressing** [2] - 4:22, 7:16
**driving** [1] - 7:7

**due** [1] - 7:17
**during** [1] - 14:14

**E**

**eating** [1] - 4:22
**effect** [1] - 15:10
**effectively** [1] - 16:7
**eight** [1] - 11:15
**either** [7] - 3:15, 4:17, 5:19, 6:10, 8:12, 15:25, 19:13
**elevated** [1] - 15:2
**eligibility** [1] - 3:18
**eligible** [2] - 9:5, 18:11
**employed** [1] - 11:24
**end** [1] - 19:15
**engage** [1] - 18:20
**engaging** [2] - 6:1, 8:1
**ENTITLED** [1] - 20:15
**entity** [1] - 16:6
**essence** [1] - 17:12
**essentially** [3] - 2:10, 3:17, 7:8
**establish** [1] - 2:14
**event** [1] - 5:5
**evidence** [9] - 2:2, 2:13, 7:13, 9:7, 9:9, 10:20, 13:2, 15:22, 18:1
**exact** [3] - 7:8, 9:25, 16:19
**examination** [2] - 5:18, 10:7
**example** [1] - 7:16
**exhibiting** [1] - 6:16
**exist** [1] - 17:5
**existence** [3] - 18:8, 18:9, 18:14
**expert** [1] - 13:9
**extent** [1] - 11:23
**extrapolate** [1] - 7:2

**F**

**fact** [12] - 2:18, 2:20, 3:5, 3:11, 7:11, 9:1, 11:12, 17:5, 17:8, 18:2, 18:8
**factors** [2] - 6:22, 7:13
**Faerman** [19] - 2:25, 3:6, 10:19, 10:20, 10:21, 11:2, 11:3, 11:10, 11:18, 12:4,

15:13, 15:15, 15:23, 16:2, 16:3, 16:11, 16:12, 16:18, 17:9
**fair** [1] - 12:9
**fairly** [1] - 3:7
**fall** [2] - 5:2, 14:4
**false** [1] - 7:11
**far** [2] - 15:15, 15:19
**FEDERAL** [1] - 20:24
**federal** [1] - 10:11
**fee** [1] - 16:13
**feigned** [1] - 3:20
**feigning** [1] - 6:18
**few** [2] - 12:11, 17:20
**finder** [1] - 18:2
**first** [1] - 13:15
**five** [2] - 6:13, 14:11
**follow** [1] - 4:5
**follow-up** [1] - 4:5
**FOR** [2] - 20:9, 20:10
**FOREGOING** [1] - 20:13
**FORMAT** [1] - 20:16
**forms** [3] - 10:24, 11:1, 11:14
**four** [3] - 4:25, 13:4, 14:11
**fracture** [10] - 5:3, 8:25, 9:2, 9:3, 9:7, 9:10, 14:7, 17:13, 17:16, 18:1
**fractures** [1] - 14:6
**fraud** [2] - 2:17, 12:19
**friendly** [1] - 12:7
**friends** [1] - 12:7
**front** [1] - 9:25
**function** [1] - 6:23
**functional** [4] - 3:8, 3:13, 6:16, 6:18
**functioning** [1] - 3:12
**functions** [1] - 7:4

**G**

**gate** [1] - 8:24
**gist** [1] - 7:2
**Golden** [12] - 1:13, 11:24, 15:16, 15:25, 16:2, 16:4, 16:5, 16:7, 16:11, 16:13, 16:18
**GOLDMAN** [1] - 16:3
**government** [1] - 10:12
**granular** [1] - 10:10
**grocery** [1] - 5:2
**ground** [1] - 7:24
**guess** [1] - 9:21

**gun** [1] - 11:8

**H**

**hand** [1] - 14:8
**hands** [1] - 4:17
**hands-on** [1] - 4:17
**hardly** [2] - 8:11
**headed** [1] - 13:8
**heal** [1] - 14:9
**healed** [2] - 5:4, 9:4
**healing** [2] - 9:10, 14:20
**hear** [1] - 1:18
**HELD** [1] - 20:14
**held** [1] - 4:11
**HEREBY** [1] - 20:11
**hernia** [3] - 14:19, 15:2
**high** [2] - 7:9, 8:3
**hill** [2] - 6:1, 6:9
**himself** [1] - 7:18
**holiday** [1] - 19:5
**home** [2] - 10:15, 10:18
**Home** [2] - 1:13, 15:16
**Honor** [26] - 1:9, 1:11, 1:14, 2:12, 2:15, 4:10, 6:5, 7:1, 7:15, 9:12, 9:25, 10:6, 11:9, 12:2, 12:5, 13:3, 13:18, 15:14, 15:20, 16:15, 16:25, 17:22, 18:8, 19:3, 19:4, 19:11
**host** [3] - 6:1, 8:1, 11:9
**hours** [2] - 10:17, 11:15
**hundred** [1] - 16:14

**I**

**IME** [4] - 8:5, 10:6, 13:1, 13:6
**IMEs** [2] - 10:2, 10:3
**immediate** [1] - 4:19
**immediately** [2] - 3:23, 6:19
**impairment** [1] - 13:25
**impairments** [1] - 15:9
**IN** [3] - 20:9, 20:14, 20:16
**inability** [3] - 3:8, 3:21, 4:25

**inclined** [1] - 6:1
**independent** [2] - 5:17, 10:7
**individuals** [1] - 13:6
**informal** [2] - 11:21, 12:6
**information** [4] - 11:22, 17:20, 17:24, 18:5
**informational** [1] - 1:25
**initiated** [1] - 14:3
**inquiry** [1] - 10:16
**instance** [4] - 6:12, 7:4, 7:20, 8:5
**instances** [1] - 10:14
**Insurance** [2] - 1:6, 12:20
**insured** [5] - 2:24, 4:14, 4:20, 18:3, 18:16
**insurer** [1] - 11:22
**intend** [1] - 13:14
**investigation** [5] - 2:18, 5:12, 12:15, 12:16, 12:17
**involved** [2] - 12:8, 15:7
**involves** [1] - 12:15
**irrespective** [1] - 6:11
**IS** [2] - 20:13, 20:16
**issue** [1] - 17:7
**issues** [1] - 7:17
**Item** [1] - 1:5
**items** [1] - 7:23
**itself** [1] - 8:9

**J**

**joined** [1] - 1:16
**JUDICIAL** [1] - 20:17
**Julia** [1] - 1:10

**K**

**Katharine** [1] - 1:17
**KLEEGER** [2] - 20:9, 20:23
**known** [1] - 16:23

**L**

**lack** [1] - 7:24
**lawsuit** [1] - 18:6
**lawyer** [1] - 13:13
**lead** [1] - 2:23
**least** [5] - 4:25,

10:12, 13:2, 13:21, 14:11
**lectern** [1] - 13:19
**leg** [6] - 7:17, 9:8, 17:13, 17:16, 18:1
**legitimate** [1] - 5:23
**letter** [1] - 8:21
**level** [3] - 9:13, 15:2, 16:8
**life** [1] - 11:22
**Life** [1] - 1:6
**limitation** [3] - 6:17, 6:18, 6:20
**limitations** [1] - 3:13
**limp** [3] - 5:8, 5:21, 8:10
**litigation** [1] - 15:8
**living** [11] - 3:9, 3:21, 4:4, 4:12, 4:15, 4:21, 8:4, 14:14, 15:11, 17:8, 18:17
**loop** [1] - 16:20
**LOS** [1] - 20:5
**Lukashin** [32] - 1:7, 1:10, 2:23, 3:2, 3:5, 3:15, 3:20, 4:5, 4:12, 4:24, 5:14, 5:19, 6:7, 6:16, 7:5, 7:16, 8:20, 9:15, 9:17, 9:19, 10:25, 11:3, 11:6, 11:10, 11:16, 12:4, 13:16, 14:18, 15:22, 17:6, 18:4, 18:10
**Lukashin's** [1] - 10:23

**M**

**managerial** [1] - 1:25
**manner** [2] - 3:25, 5:21
**March** [1] - 14:4
**MATTER** [1] - 20:15
**matter** [1] - 12:22
**matters** [1] - 12:15
**mean** [5] - 8:9, 8:14, 12:15, 13:2, 13:20
**means** [2] - 4:3, 4:17
**medical** [14] - 4:1, 5:18, 6:17, 8:21, 8:24, 9:6, 9:9, 10:7, 15:9, 16:25, 18:4, 18:9, 18:15
**meet** [1] - 3:15
**meetings** [1] - 3:19
**member** [1] - 3:12
**mental** [1] - 13:25
**mention** [1] - 8:4
**mentioned** [2] - 6:23,

8:25
**Michael** [1] - 1:15
**middle** [1] - 18:22
**might** [1] - 17:6
**miles** [1] - 11:11
**minutes** [3] - 4:1, 8:6, 17:20
**moment** [3] - 4:13, 8:19, 19:3
**Monday** [2] - 19:2, 19:4
**money** [1] - 2:6
**months** [1] - 9:3
**Mooney** [1] - 1:17
**moreover** [1] - 11:7
**morning** [1] - 1:9, 1:11, 1:14
**most** [1] - 10:22
**motion** [1] - 19:14
**move** [1] - 8:11
**movement** [1] - 7:8
**movements** [3] - 7:3, 8:1, 10:16
**MR** [32] - 1:11, 1:14, 1:20, 2:11, 2:15, 4:10, 6:5, 6:10, 7:1, 7:15, 8:23, 9:11, 9:18, 9:20, 9:24, 10:5, 10:21, 11:20, 12:1, 12:5, 12:18, 13:3, 15:14, 15:20, 16:3, 16:7, 16:14, 16:24, 17:14, 17:17, 17:21, 18:7
**MS** [5] - 1:9, 13:18, 13:23, 14:18, 15:7
**multiple** [4] - 2:22, 3:14, 14:6, 14:24

**N**

**need** [1] - 5:23
**nerve** [1] - 14:21
**never** [2] - 11:12, 18:5
**next** [2] - 6:11, 8:13
**nondisplaced** [2] - 5:3, 8:25
**normal** [1] - 3:12
**nothing** [1] - 9:12
**notion** [1] - 9:13
**notwithstanding** [1] - 17:4
**NOVEMBER** [1] - 20:20
**number** [3] - 10:17, 12:9, 12:11
**nurse** [2] - 10:13, 10:14
**nurses** [2] - 13:1,

13:5

**O**

**observation** [3] - 4:4, 6:4, 11:9
**observations** [2] - 8:15, 12:25
**observed** [12] - 3:5, 3:10, 3:24, 4:7, 4:8, 5:14, 5:25, 6:9, 9:15, 11:6, 12:9, 12:10
**obtained** [5] - 2:23, 3:4, 5:11, 6:12, 8:23
**occasion** [2] - 5:15, 5:20
**occasions** [2] - 3:14, 14:24
**occurred** [1] - 14:5
**October** [7] - 18:22, 18:24, 19:1, 19:4, 19:6, 19:7, 19:9
**OF** [7] - 20:3, 20:5, 20:7, 20:11, 20:13, 20:16, 20:17
**offer** [1] - 18:4
**office** [1] - 1:16
**OFFICIAL** [2] - 20:9, 20:24
**offshoot** [1] - 12:16
**old** [2] - 9:17, 9:19
**once** [1] - 10:12
**one** [4] - 5:15, 6:23, 8:16, 11:4
**onset** [1] - 10:1
**operate** [1] - 16:13
**opposed** [2] - 8:15, 10:14
**opposite** [1] - 3:11
**order** [1] - 4:13
**original** [2] - 17:15, 17:25
**otherwise** [1] - 13:1
**outline** [1] - 2:4
**outlined** [1] - 13:20
**own** [1] - 10:4

**P**

**PAGE** [1] - 20:15
**paid** [3] - 2:5, 2:6, 2:7
**pain** [1] - 14:20
**pairs** [1] - 16:8
**panel** [1] - 14:12
**Parkens** [3] - 1:12, 15:17, 15:25
**part** [3] - 14:13, 15:5,

16:13
**particular** [4] - 6:13, 11:14, 18:9, 18:15
**parties** [3] - 13:4, 13:10, 18:20
**paths** [2] - 11:13
**patient** [2] - 16:11, 16:12
**pattern** [1] - 6:14
**pay** [3] - 11:17, 16:11, 16:12
**payments** [2] - 9:23, 18:5
**pays** [2] - 16:11, 16:17, 16:18
**people** [2] - 16:8, 16:9
**percent** [1] - 16:14
**perfectly** [1] - 3:12
**perform** [9] - 3:8, 3:21, 4:14, 4:25, 6:25, 8:3, 17:8, 17:10, 18:16
**performed** [2] - 11:5, 13:7
**performing** [1] - 7:3
**period** [9] - 2:20, 2:22, 6:15, 6:19, 9:2, 9:24, 10:22, 14:14
**periodically** [1] - 3:16
**person** [3] - 8:2, 9:17, 12:25
**physical** [1] - 13:24
**physically** [1] - 4:19
**pick** [1] - 7:23
**place** [4] - 5:5, 11:11, 12:13, 17:2
**plaintiff** [2] - 1:15, 15:25
**plaintiff's** [1] - 14:7, 15:21
**play** [1] - 7:13
**pleadings** [1] - 1:23
**plenty** [1] - 7:21
**point** [4] - 2:2, 9:4, 13:2, 13:22
**policies** [1] - 4:3, 10:11
**policy** [6] - 2:25, 3:22, 4:11, 5:17, 18:11, 18:18
**position** [4] - 13:21, 15:19, 17:25
**possibility** [1] - 13:9
**possible** [1] - 17:5
**possibly** [2] - 8:16, 12:7
**postponement** [1] - 14:10

**postponing** [1] - 14:2
**pre** [1] - 15:8
**pre-litigation** [1] - 15:8
**presided** [1] - 2:18
**pretrial** [3] - 19:2, 19:5, 19:8
**problems** [1] - 14:12
**procedure** [2] - 17:6, 18:10
**procedures** [4] - 14:10, 14:12, 14:17, 17:2
**PROCEEDINGS** [2] - 19:21, 20:14
**process** [3] - 9:10, 10:9, 12:23
**professional** [1] - 11:18
**properly** [2] - 14:9, 14:20
**protracted** [1] - 2:19
**provide** [1] - 16:9
**provided** [2] - 10:25, 11:15
**provider** [1] - 4:1
**providing** [4] - 3:2, 4:17, 11:6, 12:10
**purported** [1] - 3:1
**purporting** [4] - 5:21, 8:10, 10:23
**PURSUANT** [1] - 20:11
**put** [2] - 7:20, 7:25

**Q**

**qualified** [2] - 10:10, 10:11
**quickly** [1] - 5:4
**quite** [1] - 12:11

**R**

**RAFALKO** [26] - 1:14, 1:20, 2:11, 2:15, 4:10, 6:5, 6:10, 7:1, 7:15, 8:23, 9:11, 9:18, 9:20, 9:24, 10:5, 10:21, 11:20, 12:1, 12:5, 12:18, 13:3, 16:24, 17:14, 17:17, 17:21, 18:7
**Rafalko** [4] - 1:15, 1:19, 2:1, 16:22
**re** [1] - 3:17
**re-assess** [1] - 3:17

really [3] - 4:25, 9:14, 18:15
reason [2] - 14:9, 14:13
reasonable [1] - 8:2
reassessed [1] - 10:12
reassessment [1] - 8:5
reassessments [1] - 10:9
receive [3] - 3:18, 9:5, 18:11
recently [1] - 9:12
reconciled [1] - 8:17
records [6] - 8:24, 16:25, 17:3, 17:19, 17:21, 18:12
referenced [1] - 17:2
referred [1] - 14:7
regard [2] - 10:19, 10:20
regarding [3] - 9:7, 9:9, 11:22
regards [1] - 7:14
REGULATIONS [1] - 20:16
reimbursed [1] - 3:3
related [1] - 17:20
relationship [3] - 12:4, 12:8, 15:24
remotely [1] - 9:15
removal [1] - 15:1
repair [1] - 14:19
repaired [1] - 14:23
repeatedly [1] - 3:20
report [4] - 3:6, 8:21, 8:22, 12:19
REPORTED [1] - 20:14
reported [5] - 4:1, 4:24, 10:24, 15:5, 17:9
REPORTER [3] - 20:3, 20:9, 20:24
reporting [2] - 3:6, 5:6
represent [4] - 5:9, 15:13, 15:16, 15:23
representation [1] - 7:10
represents [1] - 13:16
require [1] - 10:16
required [1] - 3:15
requires [1] - 10:12
requiring [1] - 16:8
respect [1] - 13:11
result [2] - 14:21, 14:25

resulted [1] - 5:3
retains [1] - 16:16
rise [1] - 19:19
Robert [2] - 1:12, 15:17
romantic [1] - 12:8
root [1] - 5:1
rough [1] - 9:21
rounds [1] - 2:22

## S

SECTION [1] - 20:12
see [10] - 7:7, 8:6, 8:9, 8:13, 13:12, 15:12, 15:18, 18:12, 18:14, 18:19
sent [1] - 5:16
separate [1] - 10:5
sequence [1] - 16:19
series [1] - 10:8
served [1] - 15:15
set [1] - 18:20
sets [1] - 2:16
seven [2] - 6:13, 11:15
several [2] - 5:4, 9:24
severe [4] - 3:7, 5:8, 13:24, 14:20
severity [2] - 9:13, 14:25
SHERI [2] - 20:9, 20:23
shoes [2] - 7:20, 7:23
short [1] - 8:12
shortly [3] - 5:24, 6:3, 6:7
show [3] - 6:24, 8:25, 17:19
shows [1] - 17:10
side [1] - 19:13
sign [1] - 10:24
significant [1] - 5:13
simple [1] - 14:19
situation [1] - 12:18
six [4] - 4:12, 4:21, 6:22, 6:25
Sklar [1] - 17:1
SKYLAR [5] - 1:9, 13:18, 13:23, 14:18, 15:7
Skylar [6] - 1:10, 9:20, 13:15, 13:17, 17:20, 18:13
slip [1] - 5:2
slip-and-fall [1] - 5:2
smoking [1] - 11:8

society [1] - 3:12
someone [2] - 5:22, 8:11
soon [1] - 3:23
sorry [3] - 6:5, 9:18, 17:14
speaking [1] - 14:1
specificity [1] - 4:3
SS [1] - 20:6
stand [1] - 4:18
stand-by-care [1] - 4:18
STATE [1] - 20:7
STATES [3] - 20:10, 20:12, 20:17
status [2] - 1:22, 1:24
steeply [1] - 5:25
STENOGRAPHICALLY [1] - 20:14
still [2] - 5:5, 11:14
store [1] - 5:2
stretch [1] - 6:14
submitted [3] - 11:1, 11:16, 12:12
subsequent [1] - 14:4
substantial [2] - 2:6, 4:16
suffered [3] - 3:7, 13:23, 14:6
suffering [1] - 13:24
sufficiently [1] - 9:4
support [6] - 8:20, 9:13, 15:5, 15:10, 17:1, 18:5
supposedly [1] - 3:1
surgeons [1] - 14:25
surgery [3] - 14:1, 14:8, 14:19, 14:22
surgical [1] - 14:10
surveillance [12] - 2:22, 3:4, 5:10, 5:13, 6:12, 6:15, 7:21, 8:8, 11:3, 11:5, 13:7, 15:22
switch [1] - 8:18

## T

tax [2] - 10:10, 10:11
terms [1] - 3:4
test [2] - 18:10, 18:17
testicular [1] - 15:1
testimony [1] - 18:4
THAT [2] - 20:11, 20:15
THE [54] - 1:5, 1:18,

1:21, 2:13, 4:2, 6:3, 6:7, 6:22, 7:12, 8:18, 9:6, 9:17, 9:19, 9:22, 10:2, 10:19, 11:18, 11:24, 12:3, 12:14, 12:24, 13:12, 13:19, 14:16, 15:4, 15:12, 15:18, 16:1, 16:5, 16:10, 16:21, 17:12, 17:15, 17:18, 17:23, 18:19, 18:24, 19:1, 19:3, 19:7, 19:11, 19:13, 19:16, 19:17, 19:19, 20:10, 20:12, 20:13, 20:14, 20:15, 20:16, 20:17
thereabouts [1] - 9:21
thereafter [3] - 3:23, 5:24, 6:19
thinking [1] - 13:11
three [2] - 9:3, 14:24
throughout [3] - 5:11, 6:15, 10:22
tie [2] - 7:20, 7:23
TITLE [1] - 20:12
TO [1] - 20:12
today [2] - 1:16, 13:24
together [2] - 11:11, 12:9
toilet [1] - 7:5
toileting [1] - 4:22
topics [1] - 8:18
touching [1] - 4:19
toward [1] - 2:6
Transamerica [21] - 1:6, 1:16, 3:3, 3:7, 4:6, 5:6, 5:16, 5:19, 8:8, 8:19, 8:23, 9:23, 10:3, 11:1, 11:2, 11:17, 13:20, 15:5, 15:10, 18:6
Transamerica's [2] - 2:25, 17:18
TRANSCRIPT [2] - 20:13, 20:15
transferring [1] - 4:23
transmitted [1] - 18:6
treated [1] - 14:13
trial [3] - 18:20, 18:21, 19:9
tried [1] - 2:2
trigger [2] - 3:22, 4:14
trousers [1] - 7:20
true [1] - 5:22
TRUE [1] - 20:13

truly [2] - 2:19, 5:13
Tuesday [1] - 18:23
turn [1] - 16:12
two [9] - 4:15, 5:25, 6:25, 8:14, 8:15, 10:5, 12:7, 13:9, 14:24
type [3] - 11:8, 14:16, 16:5
types [1] - 10:6
typically [2] - 6:13, 10:13

## U

unable [4] - 4:14, 5:6, 7:18, 14:13
under [2] - 2:24, 5:17, 18:11, 18:18
underwent [1] - 10:8
unfortunately [1] - 15:1
uniformly [1] - 3:20
UNITED [3] - 20:10, 20:12, 20:17
up [5] - 4:5, 5:25, 6:9, 7:23, 14:2
updated [2] - 17:19, 17:24
urological [2] - 14:11, 14:16

## V

versus [1] - 1:6
vicinity [1] - 4:20
video [10] - 3:5, 3:10, 3:24, 4:8, 7:21, 8:7, 9:15, 12:25, 15:22, 17:10
visit [4] - 4:5, 6:3, 6:8, 10:4
Vladimir [1] - 1:6
volume [1] - 5:13
VORONIN [5] - 1:11, 15:14, 15:20, 16:7, 16:14
Voronin [1] - 1:12, 15:13

## W

waist [1] - 7:25
walk [5] - 5:6, 5:21, 5:25, 6:8, 8:14
walking [3] - 6:9, 7:22, 8:14
whatsoever [3] - 3:13, 6:17, 6:21

**whole** [4] - 6:1, 8:1,
10:15, 11:9
**WITH** [1] - 20:16
**withstanding** [1] -
11:12
**witness** [1] - 7:3
**witnesses** [2] -
12:24, 13:9
**words** [2] - 4:7,
17:25
**works** [1] - 16:16
**wrist** [10] - 5:3, 5:7,
5:14, 7:17, 9:8, 9:9,
14:1, 17:13, 17:16,
18:1

## Y

**year** [4] - 2:20, 2:21,
5:12, 10:13
**year-long** [1] - 5:12
**years** [3] - 5:2, 5:5,
9:24
**Yuri** [1] - 1:12

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am a resident of the County of Los Angeles, State of California. I am over the age of 18. My business address is 14011 Ventura Blvd., Suite 212w, Sherman Oaks, CA 91423.

On November 18, 2019, at Sherman Oaks, California, I served the foregoing documents described as

**DECLARATION OF YURI VORONIN**

electronically via the CM/ECF system. All parties on the Notice of Electronic Filing to receive electronic notice in this action via the CM/ECF system listed below have been served.

[X] Via email through ECF:

| | |
|---|---|
| Dina R. Richman<br>COZEN & O'CONNER<br>601 S. Figueroa Street, Suite 3700<br>Los Angeles, CA 90017<br>Tel:       213.892.7900<br>Fax:      213.892-7999<br>Email:   drichman@cozen.com | *(Attorneys for Plaintiff TRANSAMERICA INSURANCE COMPANY)* |
| Michael D. Rafalko  (appearing pro hac vice)<br>Katherine E. Mooney (appearing pro hac vice)<br>COZEN O'Connor<br>One Liberty Place<br>1650 Market Street, Suite 2800<br>Philadelphia, PA 19103<br>Tel:       215.665.4611<br>Email:   mrafalko@cozen.com<br>              kmooney@cozen.com | |
| Julia Sklar<br>Law Offices of Julia Sklar<br>14414 Hamlin Street<br>Van Nuys, CA 91401 | *(Attorneys for Defendant Vladimir Lukashin)* |

| Tel:  (818) 904-1597<br>Fax:  (818) 947-0177<br>E-mail: natabykova@hotmail.com | |

[ X ] (FEDERAL) I declare that I am a member of the bar of this court.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on November 18, 2019, at Sherman Oaks, California.

/s/ Yuri Voronin
Yuri Voronin
